IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHUAYB GREENAWAY,                       :
    Plaintiff,                          :
                                        :
    v.                                  :      CIVIL ACTION NO. 25-CV-2202
                                        :
BUREAU OF HEARINGS AND                  :
APPEALS, BHA, *et al.*,                 :
    Defendants.                         :

## MEMORANDUM

**SCOTT, J.**                                          **MARCH 4  , 2026**

Plaintiff Shuayb Greenaway filed this *pro se* civil rights action against Defendants

Bureau of Hearings and Appeals ("BHA"), Department of Human Services ("DHS"), and the

State of Pennsylvania (*sic*, the "Commonwealth") alleging his due process rights were violated in

connection with the termination of his benefits offered through the Supplemental Nutritional

Assistance Program ("SNAP").  Defendants have filed a Motion to Dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and (6) (ECF No. 35), and Greenaway filed his response in

opposition thereto (ECF Nos. 36, 37).  Defendants filed a reply brief (ECF No. 39), and

Greenaway filed a sur-reply brief (ECF No. 40).  For the following reasons, Defendants' Motion

to Dismiss will be granted, and Greenaway will be given leave to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1] AND PROCEDURAL HISTORY

---

[1] The factual allegations set forth in this Memorandum are derived from Greenaway's
Complaint ("Compl."). (ECF No. 1.)  He also filed a document labeled "Exhibits" consisting of
one hundred and twenty-six pages. (ECF No. 2.)  The Court considers the entirety of these
submissions to constitute the Complaint and adopts the sequential pagination assigned by the
CM/ECF docketing system.  The Court may also take judicial notice of the information
published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir.
2017) ("To the extent that we rely on information beyond what the government included in its

Greenaway alleges, in relevant part,[2] that SNAP is a federally funded, state-administered food stamp program, administered by DHS for the Commonwealth pursuant to an agreement with the Food and Nutrition Service of the United States Department of Agriculture. (Compl. at ¶¶ 10, 12.) He further alleges that BHA is responsible for conducting the administrative hearings,[3] and that DHS "must comply with all applicable federal laws, regulations and guidance." (*Id*. at ¶¶ 9, 16.) Greenaway, a resident of the Commonwealth, claims his SNAP benefits were wrongfully terminated based on DHS's failure to correctly calculate his net income by treating his social security income as "countable income" and failing to account for shelter deductions and reoccurring medical expenses. (*Id*. at ¶¶ 48-50.) Greenaway appealed the decision terminating his benefits on February 23, 2025, and forwarded the appeal to his caseworker on February 28, 2025. (*Id*. at ¶¶ 49, 51.) He filed a second appeal with additional documentation on March 10, 2025. (*Id*. at ¶¶ 49, 53).

A hearing was held before an Administrative Law Judge ("ALJ") on April 7, 2025, and he alleges there was no evidence his caseworker submitted required documents before the hearing as required by the Commonwealth's regulations. (*Id*. at ¶ 54.) During the hearing, Greenaway claims "significant misconduct occurred" because he was not provided with "pre-conference notice with supporting documents," which resulted in a continuance of the hearing.

---

amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

[2] The Court acknowledges Greenaway's Complaint extensively alleges the statutory and regulatory scheme of SNAP, but will only set forth the factual allegations relevant to the issues currently before the Court.

[3] According to the Commonwealth's website, the BHA "is the office responsible within the Pennsylvania Department of Human Services (DHS) for conducting fair hearings resulting from actions taken by DHS as well as the Pennsylvania Department of Aging." *See* https://www.pa.gov/agencies/dhs/resources/hearings-and-appeals (last viewed Jan. 29, 2026).

(*Id.* at ¶ 55-56.)  The next day, on April 8, 2025, Greenaway requested the audio wave file and transcript from the hearing "free of charge due to indigency," which was denied and the BHA would only play the recording for him in person or via Teams.  (*Id.* at ¶¶ 57-58).  A follow-up hearing was scheduled on April 30, 2025, which he claims also did not meet the notice requirements, and was ultimately disconnected due to technical difficulty.  (*Id.* at ¶¶ 60-63.)  He alleges as of April 28, 2025, BHA has not issued a written decision on his February 23, 2025, appeal, "despite the federal requirement that such decisions must be issued within 60 days of a request for a hearing."  (*Id.* at ¶ 64).  He has experienced significant hardship based on the termination of his benefits, including food insecurity, hunger, inability to pay for necessary medications and medical care, financial strain, stress, and anxiety.  (*Id.* at ¶ 69.)

As a result of these events, Greenaway brings the following claims pursuant to § 1983 against Defendants for, *inter alia,* failing to: (i) properly calculate his income for determining his benefits eligibility (*id.* at ¶¶ 81-85); (ii) explain the basis for his benefit determination in easily understandable language (*id.* at ¶¶ 86-90); (iii) conduct timely hearings and issue timely written decisions (*id.* at ¶¶ 91-95); and (iv) provide sufficient notice of hearings and interviews, (*id.* at ¶¶ 102-106), all of which ultimately led to the improper denial of his SNAP benefits in violation of his due process rights under the Fourteenth Amendment, (*id.* at ¶¶ 96-101).  He "seeks declaratory and injunctive relief to remedy these violations and prevent similar harm to himself and other SNAP recipients in Pennsylvania."[4]  (*Id.* at ¶ 78.)

_____

[4] Greenaway also alleges the "systematic failures in DHS's administration of SNAP benefits affect not only [himself] but potentially thousands of other Pennsylvania residents who rely on these benefits for basic nutrition."  (Compl. at ¶ 70.)  To the extent that Greenaway intended to bring claims on behalf of others based on these allegations, he may not do so.  As a non-attorney proceeding *pro se*, he may not represent others or raise claims on their behalf.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated*

After being served with the Complaint, Defendants filed a motion to dismiss the claims against them. (ECF No. 35.) They argue that Greenaway's § 1983 claims should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because such claims cannot be brought against them as the Commonwealth and its agencies. (*Id.* at 8.) Defendants also move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Greenaway's claims for lack of subject matter jurisdiction because the claims against them are barred by the principle of sovereign immunity under the Eleventh Amendment. (*Id.* at 8-9.) In Greenaway's response in opposition, he claims that Defendants waived Eleventh Amendment immunity by accepting federal funds when voluntarily choosing to participate in SNAP. (ECF No. 36 at 5-6; *see also* ECF No. 37 at 3-4.) He also argues that because he seeks prospective injunctive relief to remedy ongoing violations of federal law, as opposed to monetary damages, he is entitled to bring these claims under *Ex parte Young*, 209 U.S. 123 (1908). (ECF No. 36 at 1-3; *see also* ECF No. 37 at 1-2.) Greenaway claims he is seeking injunctive relief against state officials acting in their official capacity and requests leave to amend his Complaint to add these state officials. (ECF No. 36 at 6, 9.) In their reply, Defendants reiterate their argument in support of dismissal because Greenaway only names the Commonwealth and its entities as defendants. (ECF No. 39 at 1-2.) Defendants do not oppose Greenaway's request to amend his Complaint.[5] (*Id.* at 2.)

---

*on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim) (quotations omitted).

[5] Greenaway's sur-reply, filed without leave from the Court, essentially reiterates the same arguments made in his response. (ECF No. 40.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack, like that raised by the Commonwealth, does not dispute the facts alleged in the complaint, *id.*, and therefore essentially applies the same standard as a motion under Rule 12(b)(6).  *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party.").

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendant's burden to show that a complaint fails to state a claim.  *See Hedges*

5

*v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

To determine whether a complaint filed by a *pro* se litigant states a claim, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.    DISCUSSION

Greenaway asserts his § 1983 claims based on alleged procedural defects that ultimately resulted in the termination of his SNAP benefits in violation of his due process rights. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also, e.g., Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207).

6

Greenaway has not named any proper Defendants for his claims.  Greenaway names three defendants: (i) the Commonwealth, (ii) DHS, which is an agency of the Commonwealth, and (iii) BHA, which is an office within the DHS.  As an initial matter, a state and its agencies are not considered "persons" for purposes of § 1983.  *See Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (noting that "'[s]tates or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' under § 1983" and holding "NJ Transit is an arm of the state.  The Eleventh Amendment therefore functions as a complete bar, immunizing NJ Transit from any § 1983 liability") (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989)).  Further, Greenaway's claims for injunctive relief and compensatory damages against Defendants are barred by the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.  *See Betts v. New Castle Youth Dev. Ctr.*, 621 F. 3d 249, 253 (3d Cir. 2010) ("State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment."); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).  The United States Supreme Court has made clear that Eleventh Amendment sovereign immunity applies regardless of the relief a plaintiff seeks.  *See Cory v. White*, 457 U.S. 85, 90-91 (1982) (holding that "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction" and thus  precludes both suits for money judgments and suits for injunctive relief); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) ("Absent a state's consent, the eleventh amendment bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief.").

Three exceptions to the application of Eleventh Amendment sovereign immunity exist.

First, Congress may abrogate Eleventh Amendment immunity by expressing its "unequivocal" intent to abrogate pursuant to a "valid exercise of power." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996). Second, states may waive their sovereign immunity and consent to be sued, *see Alden v. Maine*, 527 U.S. 706, 755 (1999), but a state's waiver must "be unequivocally expressed," *Pennhurst State Sch. & Hosp*, 465 U.S. at 99. Third, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), allows suits against individual state officers for declaratory and prospective injunctive relief to remedy ongoing violations of federal law.

Greenaway argues all three exceptions apply in this case. Starting with the first two exceptions, Greenaway argues that Congress abrogated a state's Eleventh Amendment immunity through federal anti-discrimination statutes, and the Commonwealth waived its Eleventh Amendment immunity on the basis that it accepted federal funds. (ECF No. 37 at 3.) It appears the relevant federal statute to which Greenaway refers is 42 U.S.C. § 2000d-7, which abrogates a State's Eleventh Amendment immunity for a violation of, among others specifically enumerated, "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." § 2000d-7(a). Although Congress "craft[ed] an unambiguous waiver of the States' Eleventh Amendment immunity" by enacting § 2000d-7, *Lane v. Pena*, 518 U.S. 187, 200 (1996), this abrogation does not apply as a catch-all for every federal statute that simply prohibits discrimination; rather the abrogation applies only to those federal statutes that prohibit discrimination explicitly "by recipients of Federal financial assistance." *Cronen v. Tex. Dep't of Hum. Servs.*, 977 F.2d 934, 936–37 (5th Cir. 1992); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985) ("mere receipt of federal funds cannot establish that a State has consented to suit in federal court," i.e., establish a waiver of sovereign immunity, and if Congress wishes to condition receipt of federal funds on waiver of immunity, it must make that

8

intent "clear").

Greenaway's arguments on the Eleventh Amendment and waiver fail. He brings § 1983 claims, not a discrimination claim, in relation to the termination of his SNAP benefits, and Eleventh Amendment immunity applies to those claims. *See, e.g., Cronen,* 977 F.2d at 936–37 (finding "that Congress intended to abrogate Eleventh Amendment immunity only for statutes that deal solely with discrimination by recipients of federal financial assistance" and thus dismissing § 1983 claim); *Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 10 (3d Cir. 2008) (*per curiam*) (affirming district court's dismissal of § 1983 claims against state entities because "the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens"); *Blanciak*, 77 F.3d at 697 ("Since Congress expressed no intention of disturbing the states' sovereign immunity in enacting § 1983, these suits, when brought against a state, are barred by the Eleventh Amendment."); *Sherle v. Pa. Dep't of Hum. Servs.*, No. 21-140, 2022 WL 17469468, at *2 (W.D. Pa. Dec. 6, 2022) (dismissing § 1983 claim against DHS as barred by the Eleventh Amendment); *Gibbons v. MN-DHS-Hennepin Cnty. Mun. Liab.*, No. 23-3848, 2024 WL 4932821, at *3 n.5 (D. Minn. Dec. 2, 2024) ("To the extent Gibbons also brings his § 1983 claim [for denial of his SNAP benefits] against MN DHS, that claim is barred by sovereign immunity under the Eleventh Amendment.") (citing *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 365 (1990)). No congressional statute unequivocally abrogates state sovereign immunity in this context nor has the Commonwealth waived its Eleventh Amendment immunity for lawsuits filed in federal court for it and its departments on the basis that it accepted federal funds. *See* 42 Pa. Cons. Stat. § 8521-22. Thus, the Court concludes that the Commonwealth and its agencies are immune from liability under § 1983, and that immunity has not been waived.

Under the third exception, *Ex parte Young*, state officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See id.,* 209 U.S. 123 (1908); *see also Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Courts reason that injunctions against state officials actively violating federal laws are "'necessary to vindicate the federal interest in assuring the supremacy of that law,'" despite the Constitution's prohibition against suits against the state. *Koslow v. Pa.*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In *Koslow*, the United States Court of Appeals for the Third Circuit held that because "the Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law," a plaintiff may sue a state official for ongoing violations of the Americans with Disabilities Act. *Id.* at 178.

To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst,* 465 U.S. at 102); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) ("suits seeking prospective, but not compensatory or other retrospective relief, may be brought against state officials in federal court challenging the constitutionality of official conduct enforcing state law."). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). Thus, under the *Ex Parte Young* doctrine, a plaintiff may bring claims against state officials in their official

capacity when they commit an "ongoing violation of federal law." *Waterfront Comm'n of New York Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotations omitted).

Although the Complaint alleges ongoing violations of the SNAP Act and Greenaway asks the Court for prospective injunctive relief to prevent these violations, *Ex Parte Young* does not apply here because Greenaway has named the Commonwealth itself, as well as its agencies, as Defendants rather than *an official* of the Commonwealth. Accordingly, the Court finds that the *Ex Parte Young* exception does not apply to his injunctive relief claims, and his Complaint as pled is barred by the Eleventh Amendment. However, the Court will permit Greenway leave to amend since he may be able to cure this defect by naming an appropriate official against whom he may raise a claim seeking prospective injunctive relief.[6]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted and the Complaint will be dismissed. Greenaway will be given an opportunity to file an amended complaint if he is capable of curing the defects the Court has identified in his claims.

An appropriate Order, which provides further instruction about amendment will be entered separately.

BY THE COURT:

_____
KAI N. SCOTT, J.

---

[6] The Court expresses no opinion of the plausibility of any such claim.