**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHUAYB GREENAWAY,** *Plaintiff, pro se,* | : | **CIVIL ACTION** |
| v. | : | **NO. 25-2202** |
| **BUREAU OF HEARINGS AND APPEALS, BHA, *et al.*,** *Defendants.* | : | |

**MEMORANDUM OPINION**

NITZA I. QUIÑONES ALEJANDRO, J. AUGUST 25, 2026

Plaintiff Shuayb Greenaway ("Plaintiff") filed this *pro se* civil rights action against the Bureau of Hearings and Appeals, the Department of Human Services, the Commonwealth of Pennsylvania, Dr. Valerie A. Arkoosh, Attorney Tracy L. Henry, Administrative Law Judge Darcie Rager, and caseworker Scarlett Lindblad, (collectively, "Defendants'"), pursuant to 42 U.S.C. § 1983, claiming that in 2025 he was denied benefits under the Federal Supplemental Nutrition Assistance Program, ("SNAP"), and Pennsylvania's Medicaid program, ("Medical Assistance"). In his operative complaint, Plaintiff avers that the Pennsylvania Department of Human Services', ("DHS"), Bureau of Hearings and Appeals, ("BHA"), committed several procedural errors during the appeal of the denial of his benefits that violated his rights under the Food and Nutrition Act of 2008, 7 U.S.C. §§ 2011 *et seq.*, (the "Act"),[1] and the Due Process Clause of the United States Constitution. Plaintiff seeks injunctive relief requiring, *inter alia*, DHS to restore his Medical Assistance coverage.

[1] The Food and Nutrition Act of 2008 does not give rise to a private right of action. Rather, it provides in pertinent part "that someone dissatisfied with a SNAP eligibility determination be afforded notice and an opportunity for a fair hearing." *Thomas v. City of Philadelphia*, No. 26-CV-2276, 2026 WL 1999554, at *6 (E.D. Pa. July 10, 2026) (internal citation and quotation marks omitted). "Pennsylvania statutes provide for that accordingly." *Id.* Thus, this Court construes Plaintiff's claims as challenging the procedures provided to him by the Pennsylvania DHS during the appeal process by way of Section 1983.

Before this Court is Plaintiff's motion for a preliminary injunction, (ECF 55), Defendants' response, (ECF 60), and Plaintiff's reply, (ECF 63). Specifically, Plaintiff moves for an order requiring DHS to: immediately restore and/or process his request for Medical Assistance; produce his complete hearing record from his appeal of the benefits denial; explain his current benefits calculation; and preserve and produce key records needed to verify DHS' calculations of his current benefits. (ECF 55). The issues have been fully briefed and are ripe for disposition. For the reasons set forth below, Plaintiff's motion is denied.

**FACTUAL BACKGROUND**

When ruling on a motion for preliminary injunction, the Court may consider, *inter alia*, affidavits, written evidence such as verified pleadings, and deposition transcripts. *See Groupe SEB USA, Inc v. Euro-Pro Operating LLC*, No. 14-cv-137, 2014 WL 2002126, at *5 (W.D. Pa. May 15, 2014); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 2008). The following is a summary of the relevant facts considered gleaned from the parties' various filings:

> Plaintiff, a resident of Pennsylvania, relies on SNAP benefits and Medical Assistance for his and his minor son's basic nutrition and health care. (ECF 43 at pp. 3, 10). In Pennsylvania, the SNAP benefits and Medical Assistance programs are administered by DHS. (*Id.* at p. 6). Plaintiff claims that between February 2024 to February 2025, he was receiving $300 per month in SNAP benefits and a Heating Standard Utility Allowance, and that he and his son were receiving Medical Assistance benefits. (*Id.* at p. 10).
>
> By letter dated February 11, 2025, Plaintiff avers that DHS terminated his household SNAP benefits, Medical Assistance, and Cash Assistance because his monthly income exceeded the income limit. (*Id.* at p. 10). Plaintiff avers that DHS wrongfully terminated these benefits based on a miscalculation of his income and a failure to apply mandatory deductions. (*Id.* at p. 1). Specifically, Plaintiff avers that DHS erroneously classified his Social Security income as "countable gross income," applied a standard deduction, and failed to account for shelter deductions and recurring medical expenses. (*Id.* at pp. 1-2).

On February 23, 2025, Plaintiff requested by e-mail correspondence a fair hearing appeal regarding DHS' benefits determination.[2] (*Id.* at pp. 2, 12); (ECF 52-1 at p. 1). On February 28, 2025, Plaintiff forwarded his appeal to Defendant Scarlett Linblad, a DHS caseworker. (ECF 43 at p. 12). Plaintiff avers that Defendant Linblad documented a conversation with him which took place on February 28th to discuss his income and expenses, and wherein Plaintiff expressed his frustrations with DHS' errors. (*Id.* at p. 12). However, Plaintiff contends that there is no record of any detailed conversation occurring between him and Defendant Linblad on February 28, 2025. (*Id.* at p. 12). Yet, sometime after February 28, 2025, Defendant Linblad updated Plaintiff's shelter expenses applicable to his income calculation. (*Id.* at p. 13). By letter dated March 3, 2025, Plaintiff was notified that his SNAP benefits would be restored at a reduced amount of $251 per month (previously, from $300 per month) based on Defendant Linblad's updated information to his file. (*Id.* at p. 13).[3]

Plaintiff's administrative DHS appeal was assigned docket number B-25-02-15006 within the DHS Bureau of Hearings and Appeals, ("BHA"). (ECF 52-1 at p. 1). A telephonic hearing was scheduled before an Administrative Law Judge, ("ALJ"), hearing officer on April 7, 2025 between 1:00 p.m. and 4:00 p.m. (*Id.*). On March 20, 2025, DHS mailed the notice of the hearing to Plaintiff's address of record and, in the notice, notified Plaintiff that the ALJ would call him at some point during the assigned time slot. (*Id.* at pp. 1-2, 4-9).

On April 4, 2025, Defendant Linblad mailed pre-hearing exhibits to Plaintiff, including a Hearing and Appeal Preparation Sheet. (ECF 43 at p. 13); (Ex. H, ECF 43 at pp. 74-83). The Hearing and Appeal Preparation Sheet explained, *inter alia*, how the determinations were made with respect to Plaintiff's benefits, that Plaintiff's son had retained his medical assistance benefits, despite Plaintiff not completing and returning necessary paperwork that had been mailed to him, and identified a path for Plaintiff to obtain his own medical assistance. (Ex. H, ECF 43 at pp. 74-83); (ECF 52 at p. 6).

On April 7, 2025, the hearing was held as scheduled before Defendant ALJ Darcie Rager. (ECF 43 at p. 13); (ECF 52-1 at p. 2). The hearing lasted

---

[2] Section 275.1 to Title 55 of the Pennsylvania Code provides that "every person applying for or receiving . . . medical assistance [or] food stamps [are afforded] the right to appeal from a [DHS] action or failure to act and to have a hearing if he is dissatisfied with a decision refusing or discontinuing assistance in whole or in part." 55 Pa. Code § 275.1(a)(2). An appellant has the right to appear and present evidence at such a hearing before a hearing officer, who has the delegated authority from the DHS Secretary to make the decision on the appeal "based upon the facts and evidence as applied to [DHS] regulations." *Id.* at §§ 275.3(a), 275.4(f)-(h).

[3] Plaintiff avers that he submitted a second appeal with additional documentation on March 10, 2025 to Defendant Linblad and the Montgomery CAO. (ECF 43 at p. 13). It does not appear that a second DHS case was opened. Because the gravamen of Plaintiff's claims pertain to the DHS appeal commenced on February 2025, Plaintiff's averments about the alleged second appeal are disregarded.

approximately 50 minutes. (ECF 52-1 at p. 2). Plaintiff avers that DHS representatives evaded questions about Plaintiff's provision of advanced notice for the pre-hearing conference, that DHS attempted to read documents aloud without providing copies to Plaintiff, and that ALJ Rager was aware of this conduct and failed to sanction DHS. (ECF 43 at p. 13). Though Plaintiff avers he declined ALJ Rager's invitation to seek a continuance, ALJ Rager continued the hearing to a later date after the parties raised certain issues. (*Id.*); (ECF 52-1 at p. 2).

On April 8, 2025, Plaintiff emailed an administrative assistant at the BHA requesting an audio file and transcript from his April 7, 2025 hearing free of charge. (ECF 43 at p. 14). On April 9, 2025, the administrative assistant responded that he would investigate the request and advised that Plaintiff could, alternatively, present to a BHA office and listen to the audio file and take notes. (*Id.*). On April 14, 2025, the administrative assistant confirmed that Plaintiff's hearing materials could only be provided to him at a cost, and renewed his offer for Plaintiff to go to the BHA office for access. (*Id.*). That same day, Plaintiff inquired into the decision makers who denied his request, and sent a detailed written objection to the same. (*Id.*). Plaintiff avers that DHS did not provide him with a formal written explanation for its denial of his request. (*Id.*). On April 22, 2025, Plaintiff contends that he again emailed DHS asserting an unspecified grievance with supporting documentation and that he was informed that the additional documentation would only be accepted by hand delivery or mail. (*Id.* at p. 15).

In the interim, on April 11, 2025, a notice of the rescheduled hearing was mailed to Plaintiff's address of record which informed Plaintiff that ALJ Rager would again call Plaintiff on April 30, 2025 between 9:00 a.m. and noon. (ECF 52-1 at p. 2). The rescheduled hearing was held on April 30, 2025 at 10:00 a.m. (ECF 43 at p. 15). Upon joining the telephonic hearing, Plaintiff repeatedly refused ALJ Rager's questions and continuously spoke over her. (ECF 52-1 at p.1). Plaintiff suddenly disconnected from the conference at 10:09 a.m. after being admonished for his conduct. (*Id.* at p. 2). ALJ Rager called Plaintiff again at 10:14 a.m. (*Id.*). Plaintiff stated that he was having difficulties with his phone and again disconnected one minute later. (*Id.*). At 10:16 a.m., ALJ Rager called Plaintiff a third time, which went straight to voicemail. (*Id.*). ALJ Rager then terminated the hearing and stated on the record that Plaintiff's appeal would be terminated. (*Id.*).

Plaintiff made no effort to reconnect with ALJ Rager on April 30, 2025, or the days that followed. (*Id.*). On May 6, 2025, BHA issued an adjudication and Final Administrative Action Order affirming the ALJ's decision, and formally dismissing Plaintiff's appeal pursuant to 55 Pa. Code § 275.4(e)(6)(iii)(A) for his failure to pursue the claim. (*Id.* at pp. 2, 16-18). The adjudication was mailed to Plaintiff's address of record on May 7, 2025. (*Id.* at p. 3). The Order provided, *inter alia*, that either party could seek reconsideration of the decision within 15 days and/or petition for review to the Commonwealth Court of Pennsylvania within 30 days. (*Id.* at p. 17).

Plaintiff contends that he never received any written decision. (ECF 43 at p. 16). Ten months later, on March 6, 2026, Plaintiff contacted BHA by telephone to request a final written decision and was informed he would be contacted by a legal assistant. (*Id.* at pp. 15-16). Plaintiff avers that he did not receive a response. (*Id.* at p. 16).

As of March 6, 2026, Plaintiff was receiving SNAP benefits in the amount of $413 per month and his minor son was receiving Medical Assistance. (*Id.* at p. 16). Plaintiff's Medical Assistance coverage remains terminated. (*Id.* at p. 16). Plaintiff avers that he has experienced food insecurity and emotional distress as result of DHS' actions. (*Id.* at pp. 17-18). Plaintiff's benefits are subject to renewal on December 31, 2026. (*Id.* at p. 16).

**LEGAL STANDARD**

Rule 65 governs the issuance of injunctions and restraining orders. Fed. R. Civ. P. 65. Injunctive relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). "Whether a plaintiff can get [a preliminary injunction] depends on whether (1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).

In *Reilly v. City of Harrisburg*, the United States Court of Appeals for the Third Circuit, (the "Third Circuit"), clarified a movant's burden when seeking a preliminary injunction and held that a movant must first demonstrate "a significantly better than negligible chance" of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction. 858 F.3d 173, 179 (3d Cir. 2017). If a movant meets these two gateway requirements, the court then "considers the remaining two factors and determines in

its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*.

**DISCUSSION**

As noted, Plaintiff moves for a preliminary injunction requiring DHS to reinstate his Medical Assistance and to produce an explanation with supporting documentation of the calculations of his current benefits.[4] In support of his request, Plaintiff argues that his Section 1983 claims satisfy each of the four factors that warrant a preliminary injunction. Defendants disagree.

As to the gateway requirements for a preliminary injunction, Defendants argue that Plaintiff cannot establish a likelihood of success on the merits because he cannot establish a constitutional violation in support of his Section 1983 claims and, further, his claims cannot proceed for want of administrative exhaustion; *i.e*. this Court's lack of subject matter jurisdiction. Defendants also argue that Plaintiff cannot establish imminent irreparable harm because he is receiving SNAP benefits, his son is receiving Medical Assistance, and Plaintiff has not made any recent effort to obtain Medical Assistance for himself. In light of the nature of the arguments raised by Defendants, this Court considers as a threshold matter the issue of subject matter jurisdiction.

***I. Subject Matter Jurisdiction***

"[F]ederal courts are courts of limited jurisdiction, and as such are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993); *see also Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) ("[T]he court can raise *sua sponte* subject-matter jurisdiction

---

[4] Plaintiff also seeks production of his complete BHA hearing record. In light of the record established before this Court by Plaintiff and Defendants, that request is moot.

concerns."). Federal courts lack power to entertain claims which are "completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. Oneida Cnty.*, 414 U.S. 661, 666 (1974). A claim meets this standard if it is "obviously without merit" or its unsoundness so clearly results from previous Supreme Court decisions "as to foreclose the subject." *Cal. Water Serv. Co. v. City of Redding*, 304 U.S. 252, 255 (1938) *(per curiam)*; *see also Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016) (explaining courts may dismiss claims "for lack of jurisdiction due to merits-related defects" in narrow circumstances, including when a claim is "wholly insubstantial and frivolous") (internal quotation marks and citation omitted).

"[C]ourts must accord special care to *pro se* claimants." *In re Energy Future Holdings Corp.*, 949 F.3d 806, 824 (3d Cir. 2020) (internal quotation marks and citation omitted). The Court must liberally construe *pro se* filings, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "even where, as here, a *pro se* plaintiff has paid the full filing fee, the Court may still dismiss a complaint that lacks merit or is plainly frivolous, for lack of subject matter jurisdiction . . ." *DeGrazia v. FBI*, 316 F. App'x 172, 173 (3d Cir. 2009) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).

42 U.S.C. § 1983 allows private citizens to seek civil remedies when they have been deprived of their rights by a state official in violation of the Constitution or federal law. *See* 42 U.S.C. § 1983. Further, the Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v.*

*Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.*; *see also Reed v. Goertz*, 598 U.S. 230, 236 (2023) (re-stating same). This is because "[a] state 'may cure a procedural deprivation by providing later procedural remedy[.]" *Murphy v. Franklin*, 510 F. Supp. 2d 558, 562 (M.D. Ala. 2007) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 11th Cir. 1994)). "'[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.'" *Id*. Thus, "[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F. 3d 107, 116 (citing *McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir.1995)).

Here, Plaintiff does not allege that he was deprived a BHA hearing once his benefits were reduced. Instead, he contests the adequacy of the procedure provided to him prior to and during the *two* hearings he received. Further, the record reflects that Plaintiff was made aware – by the mailing of the BHA's adjudication to him on May 7, 2025 – of the structured administrative process available to him for challenging such adverse decisions by Pennsylvania's public assistance framework (including, an appeal to the Pennsylvania Commonwealth Court), but that he failed to avail himself of that procedure.

Specifically, Section 275.4 to Title 55 of the Pennsylvania Code provides that, following a BHA appeal hearing, BHA's Director will issue a Final Administrative Action Order that may be appealed to the DHS Secretary and, thereafter, to the Commonwealth Court of Pennsylvania. *Id.* at § 275.4(h)(4); *see* 42 Pa. Cons. Stat. Ann. § 763(a) ("[T]he Commonwealth Court shall have exclusive jurisdiction from appeals from final orders of government agencies. . ."); *see also Dep't*

*of Pub. Welfare v. Gant*, 142 A.3d 964, 989 (Pa. Commw. Ct. 2016). As such, this Court finds that there is adequate procedure available by the state to which Plaintiff chose not to avail himself. Based on the precedent of the Supreme Court and this Third Circuit, Plaintiff's claims are "obviously without merit" such that they must be dismissed. *See Alvin*, 227 F.3d at 116 ("A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." (citation modified)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### *II. Plaintiff's Motion for Preliminary Injunction*

Even if Plaintiff's case was properly before this Court, which it is not, his motion for preliminary injunction would still fail on the gateway requirements because Plaintiff cannot meet his burden of showing a likelihood of success on the merits of his complaint and that he will suffer irreparable harm absent an injunction. Plaintiff's avenue for review presently lies with the Commonwealth Court of Pennsylvania, *see* 42 Pa. Cons. Stat. Ann. § 763(a), not this Court, and Plaintiff, thus, cannot demonstrate that he is likely to prevail on the merits in this forum. *See Amede v. Ortiz*, 2020 WL 6779134, at *2 (D.N.J. Nov. 18, 2020) ("[B]ecause the Court does not have jurisdiction and because Petitioner has no active claims, he cannot demonstrate that he is likely to prevail on the merits."). Further, Plaintiff has acknowledged that he is receiving SNAP benefits, his son is receiving his Medical Assistance, and the record establishes that Plaintiff has yet to take necessary steps to be awarded Medical Assistance. *See Molina v. Little*, 2024 WL 5469021, at *5 (W.D. Pa. Apr. 4, 2024) ("There can be no harm where the very thing a plaintiff seeks has been provided or restored to them."). As such, Plaintiff has failed to meet his burden of establishing irreparable harm. Accordingly, his motion for preliminary injunction is denied.

**CONCLUSION**

For the reasons set forth, Plaintiff's motion for a preliminary injunction is denied. This Court further finds that it lacks subject matter jurisdiction in this matter, and will dismiss, *sua sponte*, the complaint. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.